IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | : | CRIMINAL ACTION |
| of AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| KAREEM JONES | : | No. 10-307 |

## MEMORANDUM

Pratter, J.                                                                                                         January 10, 2012

**INTRODUCTION**

On May 5, 2010, Defendant Kareem Jones was charged with five violations of 21 U.S.C. § 841(a)(1), including distribution of crack cocaine and heroin and possession with intent to distribute crack cocaine and heroin, as well as with violating 18 U.S.C. 924(c)(1) and 18 U.S.C. 922(g)(1) by possessing a gun in furtherance of a drug crime and as a convicted felon.  Counts one, two, and three of the indictment relate to events that took place on February 3 and 9, 2010, as part of an FBI controlled purchase operation.  Counts four through seven arise from events that occurred during the course of a car stop by the Philadelphia Police on February 27, 2010. Mr. Jones has filed a number of pretrial motions, including a motion to dismiss the indictment and a motion for severance of the offenses.  For the reasons discussed below, the Court will deny the motion to dismiss the indictment and grant the motion for severance of the offenses.

**FACTUAL BACKGROUND**[1]

On February 3, 2010, as part of an investigation of drug and gang activity in South Philadelphia, an FBI team observed Mr. Jones and another unidentified individual in a high

---

[1]     Unless otherwise noted, the following factual background is drawn from testimony presented at a hearing, which took place on November 15, 2011 and December 28, 2011, regarding the pretrial motions in this matter.

drug-trafficking area and believed they were engaged in the sale of narcotics. The team then activated an audio/video recording device worn by a confidential informant and sent the informant around the block to attempt to purchase drugs from one of the individuals they had observed. The informant did so, purchasing five packets of crack cocaine.[2]

Almost a week later, on February 9, 2010, the FBI instructed the same confidential informant to call the drug dealer involved in the February 3, 2010 controlled purchase and set up another purchase. He did so and, again wearing audio/video recording equipment, purchased heroin and crack cocaine at a residence at 525 McKean Street. Prior to that second purchase on February 9, 2010, the informant was unable to positively identify Mr. Jones as the dealer when presented with a photo array, but just after the second purchase, he identified Mr. Jones as the dealer on both February 3 and February 9, 2010.[3] An undercover officer also observed Mr. Jones walking on McKean Street some time prior to the confidential informant's arrival on February 9, 2010.

Later that same month, in the wee hours of February 27, 2010, Mr. Jones was a passenger in a vehicle that was stopped by a Philadelphia Police officer after the driver ran a red light. When a second police officer, Officer Stephen Haraszkiewicz, arrived on the scene and

---

[2] Mr. Jones disputes that he ever sold drugs to the confidential informant, on either February 3 or 9, 2010. Although the audio recording of each event is clear, the video portion of each event is less so, particularly as to the February 9, 2010 purchase.

[3] The confidential informant used in this case was later used by the FBI in another matter in April, 2010. At that time, the informant purchased more than the agreed-upon amount of drugs, lied to the FBI agent in an attempt to keep the superfluous drugs for himself, and, after being caught in the lie, was deactivated as an informant. There is no evidence on the record that the confidential informant engaged in such deception with respect to the controlled buys allegedly involving Mr. Jones.

approached the vehicle, Mr. Jones exited the car and began running down the sidewalk, despite Officer Haraszkiewicz's instruction to stop. After a brief chase over icy streets and sidewalks, Officer Haraszkiewicz caught up with Mr. Jones, who had tripped on the ice, and placed him in handcuffs. When backup arrived, the officers did a protective pat-down of Mr. Jones, during which they felt "bulky objects" in the front pocket of his hoody. Upon further investigation, the officers discovered eight packets of drugs, which the officers later learned contained heroin, and placed Mr. Jones under arrest. After Mr. Jones was transported to the district station, the police found a few more packets containing crack cocaine, as well as a .38-caliber revolver and 24 pills later identified as Xanax.

On May 5, 2010, Agent Michael Attard testified before a federal grand jury regarding the events that form the basis of Mr. Jones's indictment.[4] He testified that video evidence shows Mr. Jones selling a confidential informant narcotics on February 3, 2010. As to the February 9, 2010 events, he testified that Mr. Jones also sold the same informant drugs on February 9, 2010 and that other FBI agents were able to see Mr. Jones at the McKean Street location at the time of the confidential informant's transaction. He further testified that the confidential informant positively identified Mr. Jones after the February 9, 2010 purchase, but he did not state that the informant was unable to make a positive identification earlier on Februrary 9, 2010. He also briefly described the events of February 27, 2010 and the items discovered in Mr. Jones's possession by the Philadelphia Police. The grand jury subsequently charged Mr. Jones in a seven-count indictment.

---

[4] The following description of Special Agent Attard's testimony is based on the May 5, 2010 grand jury transcript, attached to the Government's opposition to Mr. Jones's Motion to Dismiss the Indictment.

**DISCUSSION**

    **A.**     **Motion to Dismiss the Indictment**

The Court will first address Mr. Jones's Motion to Dismiss the Indictment. In that motion, Mr. Jones argues that the indictment must be dismissed because the Government abused the grand jury process by presenting "false or exaggerated testimony," testimony relating to evidence that was illegally seized on February 27, 2010, and testimony relating to evidence that was obtained through an illegal wiretap. He also argues that the Government's use of a confidential informant was "outrageous."

While Mr. Jones makes no attempt in his motion to flesh out these allegations, viewing them in context of his other pretrial motions and in light of oral argument, Mr. Jones claims that, as to counts one, two, and three, the FBI Agent's testimony gave the grand jury the false impression (1) that FBI agents were eyewitnesses to the controlled purchases; (2) that the videotape clearly shows Mr. Jones as the seller on both February 3 and 9, 2010; and (3) that the confidential informant was reliable, truthful and never had trouble identifying Mr. Jones as the seller. Counsel for Mr. Jones also clarified at oral argument that he was not arguing that the FBI Agent presented false testimony, but rather that the prosecutor deliberately presented a skewed picture to the grand jury.

Also, although counsel for Mr. Jones did not highlight these arguments at the hearing, the motion seems to contest the Government's presentation of evidence relating to the wiretap, perhaps because, as he argued in connection with a motion to suppress, he believes that the confidential informant failed to properly consent and, in a later incident wholly unconnected to the events involving Mr. Jones, attempted to deceive the FBI. Likewise, as he argues in another

motion to suppress, he appears to take issue with the Government's presentation of evidence as to the events of February 27, 2010 that he believes was obtained in violation of his Fourth Amendment rights.

Essentially, Mr. Jones argues that the Government should have presented the grand jury with exculpatory evidence and should have excluded impermissibly obtained evidence from its presentation. The Supreme Court has held, however, that the Government is under no such obligation. *See United States v. Williams*, 504 U.S. 36 (1992); *United States v. Calandra*, 414 U.S. 338 (1974). Although a court may dismiss an indictment where grand jury misconduct violates one of those "few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions," *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment), the Supreme Court has repeatedly admonished courts not to otherwise interfere with the grand jury's functioning as independent body. *See, e.g., Williams*, 504 U.S. 36; *Calandra*, 414 U.S. at 345 ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."); *United States v. Costello*, 350 U.S. 359, 363 (1956) (holding that the Fifth Amendment does not require a "preliminary trial" to assess the sufficiency of the evidence before the grand jury).

In *Williams*, 504 U.S. 36, a criminal defendant argued that the Government's failure to present to the grand jury evidence that would have negated an element of the offense had "substantially influenced the grand jury's decision to indict, or at the very least raised a grave doubt that the decision to indict was free from such substantial influence." *Id.* at 39-40 (internal quotation and citation omitted). The district court agreed and dismissed the indictment, the

Tenth Circuit Court of Appeals upheld the decision, and the Supreme Court granted certiorari to consider whether an indictment may be dismissed solely because the Government failed to present "substantial exculpatory evidence" to the grand jury. *Id.* at 38-40.

The Supreme Court noted that the grand jury is an accusatory rather than an adjudicatory body and that the grand jury itself has never been obligated to consider any evidence beyond that which is necessary to issue an indictment. *Id.* at 51-53. The Court, therefore, refused to impose such a duty on prosecutors. *Id.* at 53. In support, the Court reaffirmed that an indictment may not be challenged based on the sufficiency of the evidence underlying it and noted that this longstanding rule cannot be circumvented by allowing defendants to recast a sufficiency argument as an argument criticizing the prosecutor's presentation. *Id.* at 54.

In *Calandra*, 414 U.S. 338, the Supreme Court held that the Fourth Amendment exclusionary rule does not apply to grand jury proceedings. *Calandra* characterized the exclusionary rule not as one designed to protect Fourth Amendment rights, but as one designed to deter future violations. *Id.* at 347-48. The Court then balanced the deterrent effect of excluding illegally obtained evidence from grand jury proceedings against the effect such a rule would have on the efficiency and functioning of the grand jury. While the likely effect on grand juries would be to seriously impair their operation by requiring a non-adjudicatory body to conduct preliminary evidentiary hearings each time potentially tainted evidence was introduced, the Supreme Court found that enforcing the exclusionary rule at the grand jury level would result in a "speculative and undoubtedly minimal advance in the deterrence of police misconduct," given that illegally obtained evidence is already inadmissable at trial. *Id.* at 351-52. Therefore, the Supreme Court held that evidence tainted by a Fourth Amendment violation, like hearsay

evidence, *Costello*, 350 U.S. 359, and evidence tainted by a Fifth Amendment violation, *Lawn v. United States*, 355 U.S. 339 (1958), may be properly considered by a grand jury. *Id.*

Thus, Mr. Jones's motion to dismiss the indictment will be denied, both as to the argument that the prosecutor failed to present all available evidence to the grand jury and as to the argument that the prosecutor presented evidence to the grand jury that Mr. Jones now seeks to suppress as illegally obtained.

### B. Motion for Severance

Under Federal Rule of Criminal Procedure 14(a), a court may sever counts of an indictment if joinder of the counts "appears to prejudice a defendant or the government."[5] Because judicial economy weighs in favor of joinder, severance is only appropriate if the defendant shows that joinder would cause "real, not fanciful" prejudice. *United States v. Segal*, 534 F.2d 578, 583 (3d Cir. 1976). For instance, joinder may prejudice a defendant who intends to testify on his own behalf as to some counts but not as to others. *See United States v. Reicherter*, 647 F.2d 397, 400-01 (3d Cir. 1981) (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968) (severance may be required when a "defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other").

Mr. Jones argues not only that joinder of the charges relating to the controlled purchase operation with the charges relating to the car stop would lead the jury to consider altogether

---

[5] Mr. Jones also seeks to sever the offenses under Federal Rule of Criminal Procedure 8(a), which mandates severance of improperly joined counts. Because the Court finds that severance is proper under Rule 14, the Court will not address Mr. Jones's Rule 8(a) argument.

evidence of separate crimes and improperly infer a criminal disposition on his part, but also that he would be confounded in presenting very different defenses to each set of charges should the charges not be severed.  As to the charges arising from the controlled purchase, Mr. Jones does not intend to waive his Fifth Amendment rights, but rather intends to present a defense of misidentification and to raise the issue of fabrication of evidence.  As to the charges related to the car stop, however, Mr. Jones's defense will center on his intent in possessing the gun and drugs – i.e., by arguing that they were for personal use unrelated to drug trafficking – which is an issue that understandably would require his own testimony.  Beyond the Fifth Amendment issues, as Mr. Jones notes, the jury would be hard-pressed to compartmentalize extensive evidence relating to a prior drug sale when considering Mr. Jones's intent as to the gun and drugs found on his person on February 27, 2010.

     Moreover, Mr. Jones argues, and the Government admits, that the witnesses and evidence for each set of charges are not likely to overlap, *see* 12/28/11 Tr. at 108:7-15, so concerns relating to an increased burden created by separate trials are significantly less compelling in this case than in cases in which severance would result in duplication of admissible evidence.  For all of these reasons, then, the Court will grant Mr. Jones's motion for severance and sever for separate trials counts one, two, and three from counts four, five, six, and seven.

**CONCLUSION**

For the reasons set forth above, the Court will deny Mr. Jones's Motion to Dismiss the Indictment and grant his Motion for Severance. An Order to this effect follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE